**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| WAYNE LIVESAY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 24-CV-00422-GKF-CDL |
| | ) | |
| BNSF RAILWAY CO., | ) | |
| | ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

This matter comes before the court on the Motion for Partial Summary Judgment [Doc. 64] of plaintiff Wayne Livesay and the Motion for Summary Judgment [Doc. 66] of defendant BNSF Railway Company. For the reasons set forth below, BNSF's motion is denied and Mr. Livesay's motion is granted in part and denied in part.

## I. Background and Procedural History

This is an employment discrimination case under the Family and Medical Leave Act (FMLA), 29 U.S.C. §§ 2601-2654. Mr. Livesay asserts claims for FMLA interference and retaliation against BNSF, his former employer, and seeks relief including reinstatement, back pay and benefits, liquidated damages, and front pay. [Doc. 1].

BNSF filed a motion for summary judgment as to Mr. Livesay's claims, as well as the requested relief. [Doc. 66]. Mr. Livesay has filed a motion for partial summary judgment, limited to liability. [Doc. 64]. Each party responded in opposition, and the motions are ripe for the court's determination.

## II. Summary Judgment Standard

Pursuant to Federal Rule of Civil Procedure 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A dispute is "genuine" "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* Further, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). However, "at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson,* 477 U.S. at 249. That is, the court determines "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Whyte Monkee Prods., LLC v. Netflix, Inc.*, 174 F.4th 761, 776 (10th Cir. 2026) (quoting *Anderson,* 477 U.S. at 251-52).

## III. Undisputed Material Facts

The following facts are undisputed for purposes of summary judgment:

Mr. Livesay began his employment with BNSF on October 29, 1992. [Doc. 64, p. 2, ¶ 1; Doc. 74, p. 6, ¶ 1; Doc. 66, p. 6, ¶ 1; Doc. 71, p. 7, ¶ 1; Doc. 66-2; Doc. 64-2, p. 16]. On or around

April 10, 2003, Mr. Livesay was promoted to locomotive engineer and was thereafter represented by the Brotherhood of Locomotive Engineers and Trainmen ("BLET"). [Doc. 66, p. 6, ¶ 2; Doc. 71, p. 7, ¶ 2; Doc. 66-2].

During his employment with BNSF, Mr. Livesay received, understood, and was responsible for complying with BNSF policies and operating rules, including BNSF's Corporate rules, the General Code of Operating Rules (GCOR), and the Family and Medical Leave Policy (FMLA Policy). [Doc. 66, p. 6, ¶ 3; Doc. 71, p. 7, ¶ 3]. The GCOR requires employees to comply with instructions. [Doc. 66, p. 6, ¶ 4; Doc. 71, p. 7, ¶ 4; Doc. 66-5, p. 18].

BNSF's FMLA Policy permits eligible employees to receive intermittent medical leave for qualifying family or medical reasons. [Doc. 66, p. 6, ¶ 5; Doc. 71, p. 7, ¶ 5; Doc. 66-4, p. 2]. The FMLA Policy states, in part, "[a] health care provider's certification that intermittent Medical Leave or Service Member Leave is medically necessary is required." [Doc. 66-4, p. 2].

Mr. Livesay suffers from gout. [Doc. 64, p. 2, ¶ 3; Doc. 74, p. 6, ¶ 3; Doc. 64-2, pp. 61-62; Doc. 71, p. 12, ¶ 42; Doc. 78, p. 3, ¶ 42]. He receives treatment and medication for the condition from his doctor, but Mr. Livesay's gout can flare-up notwithstanding the treatment. [Doc. 64, p. 2, ¶ 6; Doc. 74, p. 6, ¶ 6; Doc. 64-2, pp. 63-64].

On September 20, 2013, BNSF approved Mr. Livesay for intermittent FMLA leave covering the period from September 16, 2013, through September 15, 2014. The approval advised Mr. Livesay that, "[i]f circumstances change during the leave, it is your responsibility to contact the treating health care provider and have him/her fax updated information to the HR Benefits Processing Team." [Doc. 66, p. 6, ¶ 6; Doc. 71, p. 7, ¶ 6; Doc. 64-3, p. 2; Doc. 66-6, p. 2].

Mr. Livesay reapplied for intermittent FMLA leave for his gout approximately every year from then until his termination. [Doc. 64, p. 3, ¶ 9; Doc. 74, p. 7, ¶ 9; Doc. 64-1, p. 1]. Each time

Mr. Livesay applied for intermittent FMLA leave, he was required to submit to BNSF a certification form filled out by his treating doctor. [Doc. 64, p. 3, ¶ 10; Doc. 74, p. 7, ¶ 10; Doc. 64-1, p. 1]. Further, BNSF repeatedly advised Mr. Livesay that, if his circumstances changed, it was his responsibility to contact his healthcare provider and submit updated information to BNSF. [Doc. 66, p. 7, ¶ 7; Doc. 71, p. 7, ¶ 7; Doc. 66-7, p. 1; Doc. 66-11, p. 1; Doc. 64-8, p. 1; Doc. 66-14, p. 1].

On March 11, 2020, BNSF notified Mr. Livesay that his FMLA usage appeared inconsistent with his approved leave. BNSF further instructed Mr. Livesay:

> If your circumstances have changed during your leave, you must contact the treating health care provider and have him/her fax updated information to Employee Services . . . . Your circumstances have changed if the duration or frequency of the absences you may need has changed, the nature or severity of your illness have changed, or complications have arisen. (For example, if your medical certification stated that you would need leave for one or two days when you suffered from a migraine headache and your absences for your last two migraines lasted four days each, then your circumstances have changed.) For your convenience, I am enclosing a copy of that health care providers [*sic*] certification form. Employee Services must receive this updated certification no later than 15 business days from the date of this letter.

[Doc. 66-8, p. 1]; *see also* [Doc. 66, p, 7, ¶ 8; Doc. 71, p. 7, ¶ 8].

On April 7, 2020, BNSF received an updated medical certification regarding Mr. Livesay's intermittent FMLA leave. [Doc. 66, p. 7, ¶ 9; Doc. 71, p. 7, ¶ 9; Doc. 66-9]. That same day, BNSF advised Mr. Livesay that his approval would remain in place through September 24, 2020. [Doc. 66, p. 7, ¶ 9; Doc. 71, p. 7, ¶ 9; Doc. 66-9; Doc. 64, p. 4, ¶ 14; Doc. 74, p. 7, ¶ 14; Doc. 64-5].

On August 7, 2020, BNSF again issued correspondence to Mr. Livesay regarding his FMLA leave. Therein, BNSF notified Livesay that "[t]he medical provider did indicate you may need 2 absences per year, each with a duration of 1 day (appts) AND/OR 1 absence per month, each with a duration of 4 days (flares)," but that BNSF's records

> indicate you have taken more than the 2 absences per year and/or exceeded the duration of 1 day (appts) AND/OR 1 absence per month, each with a duration of 4 days (flares) for which you are approved. In other words, your FMLA usage appears to be inconsistent with your current FMLA approval.

[Doc. 66, p. 7, ¶ 10; Doc. 71, p. 7, ¶ 10; Doc. 66-10, p. 1; Doc. 64, p. 4, ¶ 15; Doc. 74, p. 7, ¶ 15; Doc. 64-6]. The letter stated, "[g]iven the nature of your FMLA usage, BNSF is monitoring the situation closely." [*Id.*]. Finally, the letter instructed Mr. Livesay as follows:

> If your circumstances have changed during your leave, you must contact the treating health care provider and have him/her fax updated information to Employee Services . . . . Your circumstances have changed if the duration or frequency of the absences you may need has changed, the nature or severity of your illness have changed, or complications have arisen. (For example, if your medical certification stated that you would need leave for one or two days when you suffered from a migraine headache and your absences for your last two migraines lasted four days each, then your circumstances have changed.) For your convenience, I am enclosing a copy of that health care providers [*sic*] certification form. Employee Services must receive this updated certification no later than 15 business days from the date of this letter.

[*Id.*].

On August 11, 2022, BNSF sent Mr. Livesay a letter that stated, "[p]lease refer to the letter sent to you on August 7, 2020, this is your second notification that your FMLA usage appears to be inconsistent with your current FMLA approval." [Doc. 66, p. 8, ¶ 14; Doc. 71, p. 7, ¶ 14; Doc. 66-15, p. 1; Doc. 64, p. 4, ¶ 17; Doc. 74, p. 8, ¶ 17; Doc. 64-9]. Therein, BNSF informed Mr. Livesay that "[r]ecords indicate you have taken more than the 2 absences per year and/or exceeded the duration of 1 day (appts) AND/OR 1 absence per month, each with a duration of 4 days (flares) for which you are approved. In other words, your FMLA usage appears to be inconsistent with your current FMLA approval." [*Id.*]. Finally, BNSF advised as follows:

> If your circumstances have changed during your leave, you must contact the treating health care provider and have him/her fax updated information to Employee Services . . . . Your circumstances have changed if the duration or frequency of the absences you may need has changed, the nature or severity of your illness have changed, or complications have arisen. (For example, if your medical certification stated that you would need leave for one or two days when you

> suffered from a migraine headache and your absences for your last two migraines lasted four days each, then your circumstances have changed.) For your convenience, I am enclosing a copy of that health care providers [*sic*] certification form. Employee Services must receive this updated certification no later than 15 business days from the date of this letter.

[*Id.*].

On September 23, 2022, BNSF approved Mr. Livesay for intermittent FMLA leave covering the period from September 25, 2022, through September 24, 2023. [Doc. 66, p. 9, ¶ 16; Doc. 71, p. 7, ¶ 16; Doc. 66-16; Doc. 64, p. 4, ¶ 20; Doc. 74, p. 9, ¶ 20; Doc. 64-11]. Specifically, the approval letter included the following:

> You have been approved for the following:
>
> - 2 absences per year with a duration of 1 day for appts (weekend use, likely)
> - 2 absences per month with a duration of 3 days for flare ups (weekend use, likely)

[*Id.*]. Therein, BNSF also advised as follows:

> You must comply with and not exceed the frequency and duration of your approved FMLA leave.
>
> If your circumstances, as described by the medical certification change significantly, such as your need to take more frequent or longer FMLA leave it is your responsibility to contact the treating health care provider and have him/her fax updated information to Employee Services.

[*Id.*].

In June of 2023, Mr. Livesay laid off seven days for FMLA for flare ups. [Doc. 66, p. 9, ¶ 17; Doc. 66-3, p. 35; Doc. 71, p. 7, ¶ 17].

Pursuant to its discipline policy, BNSF conducts an investigatory hearing before imposing discipline on a union employee for an alleged violation of company rules. [Doc. 64, p. 5, ¶ 23; Doc. 74, p. 9, ¶ 23; Doc. 64-12, pp. 17-18]. On July 26, 2023, BNSF sent Mr. Livesay a "FMLA

Notice" directing him to attend an investigation hearing on Tuesday, August 8, 2023. The letter indicated that the hearing "relates to the month(s) of June 2023" and was for the purpose of "ascertaining the facts and determining your responsibility, if any, in connection with your alleged indifference to duty and failure to comply with written instructions relating to your FMLA usage issued to you by Director of Administration in a Certified Letter dated August 7, 2020, and Certified Letter dated August 11, 2022." [Doc. 66, p. 9, ¶ 18; Doc. 71, p. 8, ¶ 18; Doc. 66-17, p. 1; Doc. 64, p. 5, ¶ 24; Doc. 74, p. 9, ¶ 24].

BNSF subsequently received from Mr. Livesay an updated Certification of Health Care Provider from Monty J. Grugan, D.O. [Doc. 66, p. 10, ¶ 20; Doc. 71, p. 8, ¶ 20; Doc. 66-18; Doc. 64, pp. 5-6, ¶ 25, Doc. 74, p. 9, ¶ 25; Doc. 64-14]. Therein, Dr. Grugan stated that he "can not predict" the frequency of Mr. Livesay's absences, but, in response to "[e]stimate the frequency of absences and duration required for each absence" for general care, flare-ups, and self-administered treatments, he indicated four absences per month of a duration of one to three days. [Doc. 64, pp. 5-6, ¶ 25, Doc.74, p. 9, ¶ 25; Doc. 64-14, p. 3].

On August 18, 2023, BNSF sent a letter to Mr. Livesay's healthcare provider advising that, on August 10, 2026, it had received the Certification of Health Care Provider and requesting that Dr. Grugan review same and authenticate that it had not been altered so that BNSF could continue the approval process for the FMLA request. [Doc. 66, p. 10, ¶ 20; Doc. 71, p. 8, ¶ 20; Doc. 66-18; Doc. 64, p. 6, ¶ 26; Doc. 74, p. 9, ¶ 26; Doc. 64-19].

BNSF subsequently approved Mr. Livesay for intermittent FMLA leave for the period from September 25, 2023, through September 24, 2024. [Doc. 66, p. 10, ¶ 21; Doc. 71, p. 8, ¶ 21; Doc. 66-20; Doc. 64, p. 6, ¶ 27; Doc. 74, pp. 9-10, ¶ 27; Doc. 64-15]. BNSF's approval letter included the following:

***You have been approved for the following:***

> **4** absences per **year** with a duration of **3 days** per absence for appointments, **with** possible weekend use
>
> **4** absences per **month** with a duration of **3 days** per absence for flare ups, **with** possible weekend use

[*Id.*].

On November 8, 2023, BNSF conducted the investigative hearing referenced in the July 26, 2023, notice regarding Mr. Livesay's alleged failure to comply with written instructions governing his FMLA usage and related leave requirements. [Doc. 66, p. 10, ¶ 22; Doc. 71, p. 8, ¶ 22; Doc. 66-3; Doc. 64, p. 6, ¶ 28; Doc. 74, p. 10, ¶ 28; Doc. 64-16]. BNSF's investigation ultimately concluded that Mr. Livesay used FMLA leave and other covered time off in a manner that extended his time away from work beyond the scope identified in his approved medical certifications. [Doc. 66, p. 10, ¶ 23; Doc. 71, p. 8, ¶ 23; Doc. 66-21].

At the time of the investigatory hearing, Mr. Livesay had 325 hours of unused FMLA leave for 2023. [Doc. 64, p. 9, ¶ 38; Doc. 74, p. 13, ¶ 38; Doc. 64-16, p. 44].

On December 1, 2023, BNSF terminated Mr. Livesay's employment, effective immediately. [Doc. 66, p. 10, ¶ 24; Doc. 71, p. 8, ¶ 24; Doc. 66-22; Doc. 64, p. 8, ¶ 33; Doc. 74, p. 12, ¶ 33; Doc. 64-20]. The termination letter cited Mr. Livesay's "indifference to duty and failure to comply with instructions relating to your FMLA usage," specifically the month of June 2023. [*Id.*]. Theresa Aguilar (formerly, Chavez), BNSF's Director of Administration for the Southwest Division, testified that, had Mr. Livesay not taken FMLA leave in June 2023, BNSF would not have initiated an investigation and Mr. Livesay would not have been noticed for an investigation or disciplined. [Doc. 64, p. 8, ¶ 35; Doc. 74, p. 12, ¶ 35; Doc. 64-18, pp. 44, 52].

Mr. Livesay has a combined 90% permanent service-connected disability rating through the Department of Veterans Affairs. [Doc. 66, p. 11, ¶ 28; Doc. 71, p. 9, ¶ 30; Doc. 66-30]

Mr. Livesay's railroad retirement annuity became effective on March 1, 2024. [Doc. 66, p. 11, ¶ 30; Doc. 71, p. 9, ¶ 30]. Mr. Livesay received his first annuity payment in May 2024 and has since received monthly annuity payments generally ranging from approximately $4,900 to $5,400 per month. [*Id.*].

## IV. Analysis

As previously stated, Mr. Livesay asserts claims pursuant to 29 U.S.C. § 2615 of the FMLA. The U.S. Court of Appeals for the Tenth Circuit "has recognized two theories of recovery under § 2615(a): an entitlement or interference theory arising from § 2615(a)(1), and a retaliation or discrimination theory arising from § 2615(a)(2)." *Metzler v. Fed. Home Loan Bank of Topeka,* 464 F.3d 1164, 1170 (10th Cir. 2006)). "The distinction between these two theories is important because the elements and burdens of proof that apply to § 2615(a)(1) claims differ from those that apply to § 2615(a)(2) claims." *Id.* Mr. Livesay asserts both an interference and retaliation theory. The court separately considers each theory, then considers BNSF's motion with respect to Mr. Livesay's requested relief.

### *A. FMLA Interference*

"To establish a claim of FMLA interference under § 2615(a)(1), an employee must show '(1) that [he] was entitled to FMLA leave, (2) that some adverse action by the employer interfered with [his] right to take FMLA leave, and (3) that the employer's action was related to the exercise or attempted exercise of [his] FMLA rights." *Dalpiaz v. Carbon Cnty.*, 760 F.3d 1126, 1132 (10th Cir. 2014) (quoting *Campbell v. Gambro Healthcare, Inc.*, 478 F.3d 1282, 1287 (10th Cir. 2007)).

"Under this theory, a denial, interference, or restraint of FMLA rights is a violation regardless of the employer's intent." *Metzler,* 464 F.3d at 1180.

1. Entitlement to FMLA Leave

BNSF does not dispute that Mr. Livesay was entitled to FMLA leave. [Doc. 74, p. 16]. However, BNSF contends that it did not interfere with his FMLA rights. [*Id.*].

2. Adverse Action That Interfered with Rights

"To satisfy the second element of an interference claim—adverse action interfering with the right to take FMLA leave—'the employee must show that [he] was prevented from taking the full 12 weeks[] of leave guaranteed by the FMLA, denied reinstatement following leave, or denied initial permission to take leave.'" *Dalpiaz,* 760 F.3d at 1132 (quoting *Campbell*, 478 F.3d at 1287). "Thus, an interference claim arises when an adverse employment decision is made before the employee has been allowed to take FMLA leave or while the employee is still on FMLA leave." *Dalpiaz,* 760 F.3d at 1132.

As previously stated, it is undisputed that, at the time of the investigatory hearing, Mr. Livesay had 325 hours of unused FMLA leave for 2023. [Doc. 64, p. 9, ¶ 38; Doc. 74, p. 13, ¶ 38; Doc. 64-16, p. 44]. A reasonable juror could conclude that, by terminating Mr. Livesay prior to the end of 2023, BNSF interfered with his ability to take the remaining time to which he was entitled. *See Metzler,* 464 F.3d at 1180-81. Thus, the second element of plaintiff's FMLA interference is satisfied.

3. Causal Connection

The court next considers the third element—whether BNSF's actions were related to Mr. Livesay's exercise or attempted exercise of his FMLA rights. *Dalpiaz*, 760 F.3d at 1132. BNSF contends that it terminated Mr. Livesay, not as a result of his exercise of his FMLA rights, but,

instead, due to his "repeatedly violating written instructions governing his leave usage" and failing to comply with the FMLA's notice and certification requirements. [Doc. 66, pp. 16-17; Doc. 74, pp. 19-23]. Accordingly, the court turns to the FMLA's notice and certification requirements.

a. Notice Requirements

Pursuant to the FMLA, "leave may be taken intermittently," which is "FMLA leave taken in separate blocks of time due to a single qualifying reason." 29 C.F.R. § 825.202(a). An employee requesting FMLA leave must provide notice to the employer of the need for leave and "explain the reasons for the needed leave so as to allow the employer to determine whether the leave qualifies under the Act." *Id.* § 825.301(b). Where the need for intermittent leave is foreseeable, the notice must be provided at least 30 days prior to the leave or, if 30 days notice is not possible, "as soon as practicable." *Id.* § 825.302(a). "As soon as practicable means as soon as both possible and practical, taking into account all of the facts and circumstances in the individual case." *Id*. § 825.302(b).

Likewise, where the need for leave is not foreseeable, "an employee must provide notice to the employer as soon as practicable under the facts and circumstances of the particular case." *Id*. § 825.303(a). Further, the employee "must comply with the employer's usual and customary notice and procedural requirements for requesting leave, absent unusual circumstances." *Id.* § 825.303(c). "If an employee does not comply with the employer's usual notice and procedural requirements, and no unusual circumstances justify the failure to comply, FMLA-protected leave may be delayed or denied." *Id.*

With respect to notice, a Tenth Circuit panel has stated "[t]he critical question is whether the information imparted to the employer is sufficient to reasonably apprise it of the employee's request to take time off for a serious health condition." *Crowell v. Denver Health & Hosp. Auth.*,

572 F. App'x 650, 653 (10th Cir. 2014) (unpublished).[1] The responsibility then shifts to the employer to "designate leave as FMLA-qualifying." *Id.* (citing 29 C.F.R. § 825.301(a)). To do so, the employer may "obtain any additional required information." 29 C.F.R. § 825.303(b).

Here, neither party directs the court to evidence regarding the notice provided by Mr. Livesay of the seven days he laid off in June of 2023. For this reason, neither party is entitled to summary judgment on this issue. *See* Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment *if the movant shows that there is no genuine dispute as to any material fact* and the movant is entitled to judgment as a matter of law.").

b. Certification Requirements

Regardless, having reviewed the parties' briefs, notice does not appear to be the relevant issue. In response to Mr. Livesay's motion, BNSF argues that the FMLA imposed an "independent" obligation on Mr. Livesay to provide notice a*nd updated medical information*—specifically, a certification—that his need for leave exceeded his treating physician's estimate. [Doc. 74, p. 19-22]. However, the FMLA's regulations regarding notice ***do not*** require that the employee requesting leave provide a certification or any other form of medical documentation. *See* 29 C.F.R. §§ 825.302(c), 825.303(b). Rather, as previously stated, the employee need only provide sufficient information, such as identifying the condition that renders the employee unable to perform the functions of the job, to put the employer on notice that the FMLA may apply. The regulations then place the burden on the employer to obtain additional information to determine whether the FMLA applies. *See id.; see also Aubuchon v. Knauf Fiberglass, GMBH,* 359 F.3d 950, 953 (7th Cir. 2004) ("[T]he employee's [notice] duty is merely to place the employer on

[1] "Unpublished decisions are not precedential but may be cited for their persuasive value." 10th Cir. 32.1(A).

notice of a probable basis for FMLA leave. . . . That is enough to trigger the employer's duty to request such additional information from the employee's doctor or some other reputable source as may be necessary to confirm the employee's entitlement.").[2]

A certification by a healthcare provider constitutes one means through which employers may verify entitlement to FMLA leave. *See Dry v. The Boeing Co.*, 92 F. App'x 675, 677 (10th Cir. 2004) (citing 29 U.S.C. §§ 2613(a), 2614(c)(3)(A)) (unpublished); *see also* 29 C.F.R. § 825.305(a). "FMLA regulations outline the medical certification process, including the respective duties of the employer and employee." *Bass v. Potter*, 522 F.3d 1098, 1099 (10th Cir. 2008). Pursuant to the regulations, "[a]n employer must give notice of a requirement for certification each time a certification is required." 29 U.S.C. § 825.305(a). Additionally, "the employer may require an employee who has a recurrent need to take FMLA leave to 'obtain subsequent recertifications on a reasonable basis.'" *Dry,* 92 F. App'x at 677 (citing 29 U.S.C. § 2613(e)). Courts have applied § 825.305's requirement that the employer provide notice that a certification is required to requests for recertification. *See Jordan v. Marsh USA, Inc.*, No.18-C-4327, 2019 WL 5682834, at *5 (N.D. Ill. Nov. 1, 2019) (quoting 29 C.F.R. § 825.305(a)) ("A recertification request may be made orally, but an 'employer must give notice of a requirement for certification each time a certification is required.'"); *Kempf v. Ill. Dep't of Hum. Servs.*, 618 F. Supp. 3d 804, 809 (C.D. Ill. 2022); *see also* 29 C.F.R. § 825.308 (contemplating recertification upon employer request); *Jackson v. United States Postal Serv.*, 149 F.4th 656, 672 (6th Cir. 2025) ("This regulation, explicitly, envisions a scenario where an employee takes unforeseeable intermittent leave beyond their medical

---

[2] Thus, "the concept of notice under FMLA (which is mandatory) is distinct from the concept of medical certification (which the employer may, but need not, require)." *Lukacinsky v. Panasonic Serv. Co.*, No. 03-40141-FDS, 2004 WL 2915347, at *13 n.20 (D. Mass. Nov. 29, 2004).

certification. The burden of how to handle an incorrect or out-of-date estimate, throughout all this, is on the employer."). Thus, the applicable regulations did not impose an "independent" obligation on Mr. Livesay to provide an updated certification, but, instead, required that BNSF—the employer—request recertification.

Citing its prior correspondence, BNSF asserts that it "repeatedly instructed [Mr. Livesay] to obtain updated certification if his circumstances had changed." [Doc. 66, pp. 16-17]. The cited correspondence falls into two categories: (1) correspondence approving intermittent leave, and (2) notices regarding FMLA usage. The court separately considers each type of correspondence in relation to recertification.

*i. Approval Letters*

As set forth above, in the correspondence approving intermittent leave, BNSF advised Mr. Livesey that "if [his] circumstances, as described by the medical certification change significantly, such as [the] need to take more frequent or longer FMLA leave it is your responsibility to contact the treating health care provider and have him/her fax updated information to Employee Services." [Doc. 66-16, p. 1]. Such blanket notices are insufficient. As explained by an earlier court in this district in the context of an employee manual:

> [The employer's] wholesale reliance on its employee manual converts the right of the employer to require medical certification into an additional obligation on the employee in order to exercise of his or her rights under the statute. By claiming that a statement in the policy manual is a blanket requirement to provide medical certification each time an absence is taken shifts the burden in this context from the employer to the employee and results in a significant modification of the statute. . . . Therefore, the Court concludes, as a matter of law, that a blanket requirement for medical certification in the policy manual cannot satisfy an employer's obligation to notify an employee that medical certification is requested "each time a certification is required." The law mandates that an employer communicate its desire for medical certification in each instance that it deems it necessary to meet its legal obligation to determine whether the leave sought qualifies under the FMLA.

*Henderson v. Whirlpool Corp.*, 17 F. Supp. 2d 1238, 1248 (N.D. Okla. 1998) (internal footnote omitted); *see also Kempf,* 618 F. Supp. 3d at 810-11 (collecting cases for the proposition that certification notice requirement is not satisfied by blanket statements that certifications are required).

Further, BNSF's statements that, if circumstances changed significantly during his leave, it was Mr. Livesay's obligation to contact his healthcare provider and provide updated information (included in its letters approving intermittent leave) were premature and ran afoul of FMLA regulations. Generally, where, as here, "the medical certification indicates that the minimum duration of the condition is more than 30 days, an employer must wait until that minimum duration expires before requesting a recertification." 29 C.F.R. § 825.308(b). However, "[i]n all cases, an employer may request a recertification of a medical condition every six months in connection with an absence by the employee," and, therefore, "even if the medical certification indicates that the employee will need intermittent . . . leave for a period in excess of six months (e.g., for a lifetime condition), the employer would be permitted to request recertification every six months in connection with an absence." *Id.* Further, the regulation enumerates certain exceptions pursuant to which an employer may request recertification in less than 30 days, including "[c]ircumstances described by the previous certification have changed significantly (e.g., the duration or frequency of the absence, the nature or severity of the illness, complications)." *Id.* § 825.308(c)(2). The regulation provides an example where circumstances have changed as

> a medical certification stated that an employee would need leave for one to two days when the employee suffered a migraine headache and the employee's absences for his or her last two migraines lasted four days each, then the increased duration of absence might constitute a significant change in circumstances allowing the employer to request a recertification in less than 30 days.

*Id*. In all circumstances, however, the employer must allow fifteen calendar days after its request for the employee to provide the recertification. *Id.* § 825.308(d).

By requesting recertification in its letters approving FMLA leave, BNSF impermissibly sought recertification prior to the expiration of six months. *Id.* § 825.308(b). And, although defendant attempts to rely on the exception for changed circumstances, BNSF offers no evidence that, at the time, Mr. Livesay had exceeded the estimated duration and scope of his approval. That is, the request for recertification was not made in connection with Mr. Livesay's absences. *See id.* §§ 825.308(a)-(c).

Instead, in the letters approving intermittent leave, BNSF sought to shift the burden to Mr. Livesay to provide recertification. This is inconsistent with FMLA regulations and impermissible. *See Jurczyk v. Coxcom*, *LLC,* 191 F. Supp. 3d 1256, 1264 (N.D. Okla. 2016) (quoting *Smith v. City of Niles*, 505 F. App'x 482, 484 (6th Cir. 2012) ("An unreasonable demand for recertification may interfere with FMLA rights.")). Further, BNSF's position treated Dr. Grugan's estimates as a "hard cap," which is also inappropriate. *See Hansen v. Fincantieri Marine Grp., LLC,* 763 F.3d 832, 842-43 (7th Cir. 2014) ("[The employer] should have sought recertification when the frequency of [employee's] absences exceeded what was estimated in his certification, rather than simply denying him leave. . . . We reject the argument that the estimates in the certification act as limitations on the frequency and duration of episodes for which an employee may be entitled to intermittent leave under the FMLA."). For all of these reasons, BNSF's letters approving intermittent leave do not constitute requests for recertification pursuant to 29 C.F.R. § 825.308.

*ii. Notices Regarding FMLA Usage*

The court next turns to BNSF's notices regarding Mr. Livesay's FMLA usage—specifically, BNSF's August 7, 2020 and August 11, 2022 correspondence. However, as

previously stated, an employer may request recertification "only in connection with an absence by the employee." 29 C.F.R. § 825.308(a). It is undisputed that the August 7, 2020 letters and August 11, 2022 letters were not "in connection with an absence by" Mr. Livesay in June of 2023. Nor, as previously discussed, is a blanket request for recertification in the future permissible. Thus, the letters cannot reasonably be construed as requests for recertification in connection with Mr. Livesay's June 2023 FMLA usage.

Looking next to the July 26, 2023 FMLA Notice, the letter does not request information regarding Mr. Livesay's healthcare provider, plaintiff's serious health condition, Mr. Livesay's need for leave, or ask whether Mr. Livesay's circumstances have changed significantly since his last certification. As a result, a reasonable juror could not infer that the correspondence constitutes a request for recertification. *Cf.* 29 C.F.R. §§ 825.306, 825.308.

Based on the foregoing, the undisputed evidence demonstrates that BNSF *did not* request recertification as required by applicable regulations when Mr. Livesay's leave exceeded the frequency and duration estimates provided by Dr. Grugan. Further, Mr. Livesay submits undisputed evidence that, following his seven absences in June 2023, he submitted an updated Certification of Health Care Provider from Dr. Grugan wherein Dr. Grugan estimated that Livesay would require four absences per month of a duration of one to three days for flare-ups. *See* [Doc. 64-14].

As previously stated, BNSF argues that Mr. Livesay cannot satisfy the third element of a FMLA interference claim—that its action was related to the exercise or attempted exercise of his FMLA rights—because its decision to terminate Livesay was due to his "repeatedly violating written instructions governing his leave usage" and failing to comply with the FMLA's certification requirements. However, for the reasons set forth above, BNSF's written instructions

governing leave usage and requests for certification were contrary to regulations regarding the FMLA. Accordingly, Mr. Livesay's alleged violation of the instructions cannot serve as a legitimate reason for his dismissal. *See Ortega v. San Juan Coal Co.,* No. 12-CV-0501-MV-RHS, 2013 WL 12116377 (D.N.M. Oct. 3, 2013). BNSF offers no other reason for terminating Mr. Livesay.[3]

"To survive summary judgment, the employer must point to uncontroverted evidence from which a reasonable jury could find that the employee would be terminated regardless of the employee's exercise or attempted exercise of rights under the FMLA." *Brown v. ScriptPro,* No. 10-2296-JAR, 2011 WL 3880855, at *10 (D. Kan. Sept. 1, 2011) (citing *DeFreitas v. Horizon Inv. Mgmt. Corp.*, 577 F.3d 1151, 1160-61 (10th Cir. 2009)); *see also Janczak v. Tulsa Winch, Inc*., 621 F. App'x 528, 531 (10th Cir. 2015) (unpublished). BNSF has not done so. Based on the foregoing, no genuine dispute of material fact exists. Accordingly, BNSF's action was related to Mr. Livesay's exercise of his FMLA rights, and Mr. Livesay is entitled to a judgment as a matter of law as to his FMLA interference claim. *See Metzler,* 464 F.3d at 1180 ("Under this theory, a denial, interference, or restraint of FMLA rights is a violation regardless of the employer's intent.").

*B. FMLA Retaliation*

Unlike a FMLA interference claim, "[r]etaliation claims under the FMLA are subject to the burden-shifting analysis of *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973)." *Metzler,* 464 F.3d at1170. As explained by the Tenth Circuit:

> Under this analysis, the plaintiff bears the initial burden of establishing a prima facie case of retaliation. If the plaintiff does so, then the defendant must offer a

---

[3] In fact, Ms. Aguilar testified that, had Mr. Livesay not taken FMLA leave in June 2023, BNSF would not have initiated an investigation or disciplined him.

> legitimate, non-retaliatory reason for the employment action. The plaintiff then bears the ultimate burden of demonstrating that the defendant's proffered reason is pretextual.

*Id.* (internal citations omitted).

A prima facie case of retaliation requires Mr. Livesey to show: (1) that he engaged in a protected activity; (2) defendant took an action that a reasonable employee would have found materially adverse; and (3) there exists a causal connection between the protected activity and the adverse action. *Id.* at 1171. "The standard for proving a prima facie case[] . . . is low." *Garrett v. Hewlett-Packard Co.*, 305 F.3d 1210, 1221 (10th Cir. 2002). BNSF does not dispute that Mr. Livesay engaged in protected activity by laying off seven days for FMLA leave in June 2023. Nor is it disputed that BNSF acted in a manner that a reasonable employee would have found materially adverse by terminating Mr. Livesay's employment. *See* [Doc. 66, pp. 18-19; Doc. 74, pp. 24-26]. Thus, the court considers only the third element—casual connection.

The Tenth Circuit has "repeatedly recognized temporal proximity between protected conduct and termination as relevant evidence of a causal connection sufficient to 'justify an inference of retaliatory motive.'" *Metzler,* 464 F.3d at 1171 (quoting *Haynes v. Level 3 Commc'ns, LLC,* 456 F.3d 1215, 1228 (10th Cir. 2006)). It is undisputed that Mr. Livesay laid off seven days of FMLA leave in June of 2023, then received the FMLA Notice—which ultimately resulted in his termination—within four weeks. Further, the December 1, 2023 dismissal letter indicated that Mr. Livesay was dismissed for "indifference to duty and failure to comply with instructions relating to your FMLA usage," related to June 2023, but, as set forth above, evidence exists from which competing inferences may be drawn as to whether Mr. Livesay complied with those instructions. Based on the foregoing, Mr. Livesay has satisfied his "low" burden to show a prima facie retaliation case. *See Garrett*, 305 F.3d at 1221.

Mr. Livesay having satisfied his initial burden, BNSF offers evidence of a legitimate, non-retaliatory reason for his termination—specifically, "indifference to duty and failure to comply with instructions relating to your FMLA usage issued to you by Director of Administration in Certified Letter dated August 7, 2020, and Certified Letter dated August 11, 2022. This relates to the month(s) of June 2023." [Doc. 66-22].

Finally, the court considers whether BNSF's proffered reason is pretextual—that is, "[t]he burden . . . shifts to [Mr. Livesay] to 'show that there is a genuine dispute of material fact as to whether [BNSF's] reasons for terminating [him] are pretextual.'" *Campbell v. Gambro Healthcare, Inc.,* 478 F.3d 1282, 1290 (10th Cir. 2007) (quoting *Metzler,* 464 F.3d at 1172). Mr. Livesay may satisfy the burden "by demonstrating 'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence.'" *Campbell,* 478 F.3d at 1290 (quoting *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir. 1997)). "Evidence of pretext may take a variety of forms," including evidence the employer's stated reason for the adverse employment action was false or that the employer acted contrary to a written company policy. *Dewitt v. Sw. Bell Tel. Co*., 845 F.3d 1299, 1307 (10th Cir. 2017) (internal quotations omitted). However, "[t]he employee can show pretext by a variety of evidence; no one type of evidence is required." *Brown v. ScriptPro, LLC*, 700 F.3d 1222, 1229 (10th Cir. 2012).

Importantly, "[e]vidence that the employer should not have made the termination decision—for example, that the employer was mistaken or used poor business judgment—is not sufficient to show that the employer's explanation is unworthy of credibility." *Dewitt*, 845 F.3d at 1307. Nor is "[m]ere conjecture that [the] employer's explanation is a pretext for intentional discrimination" sufficient. *Id.*

BNSF argues that Mr. Livesay cannot demonstrate pretext because it has consistently maintained that Mr. Livesay was terminated for his failure to "notify BNSF and obtain updated medical certification after his circumstances changed, despite repeated instructions that he was required to do so." [Doc. 74, p. 26]. BNSF is correct that it consistently maintained its proffered reason and, as a result, a reasonable juror could conclude that the proffered reason was not pretextual. However, as previously stated, the letters did not advise Mr. Livesay that an updated certification was needed "in connection with an absence" as required. Further, the letters do not include a timeframe for requiring future updated certifications.[4] Moreover, insofar as BNSF points to its Corporate Rule, Family and Medical Leave, the guidelines are silent as to recertification. [Doc. 66-4]. Finally, Mr. Livesay submits evidence from which a jury could infer that he *did* provide BNSF updated certification documents following his changed circumstances in June of 2023. *See* [64-14]. Under the circumstances, a reasonable juror could conclude that BNSF's proffered reason—failure to follow instructions and obtain necessary certifications—was unworthy of credibility.

Citing the Tenth Circuit's decision in *Medley v. Polk Co.*, 260 F.3d 1202 (10th Cir. 2001), BNSF suggests that no FMLA violation exists because it acted on a good faith belief that Mr. Livesay has misused FMLA leave. *See Medley*, 260 F.3d at 1207 (internal footnote omitted) ("The law, from a number of authorities at both the federal appellate and district court levels, is, however, uncontradictedly being pronounced that an employer who discharges an employee honestly believing that the employee has abandoned [his] job and is otherwise not using FMLA leave for its . . . 'intended purpose' . . . would not be in violation of FMLA, even if its conclusion is mistaken,

---

[4] Rather, the letters indicate that the updated certifications must be provided "no later than 15 business days from the date of this letter." [Doc. 66-8, p. 1; Doc. 66-10, p. 1; Doc. 66-15, p. 1].

since this would not be a discriminatory firing."). However, unlike in the traditional "honest but mistaken" belief cases, BNSF offers no evidence that Mr. Livesay "abused" his FMLA leave because he was not, in fact, suffering from a serious health condition (specifically, a gout flareup) during the seven days in which he laid off in June 2023. *Cf. Medley,* 260 F.3d at 1206 (employer presented evidence that plaintiff was not actually caring for her father during FMLA leave as represented). Rather, BNSF asserts only that Mr. Livesay exceeded the FMLA leave for which he was initially approved and failed to provide an updated certification. Another court in this district has previously distinguished periods of *technical* noncompliance from "honest but mistaken" belief cases. *See Jurczyk*, 191 F. Supp. 3d at 1267; *see also Burnett v. LFW Inc.*, 472 F.3d 471, 482 (7th Cir. 2006) (employer not entitled to summary judgment as to retaliation claim where nondiscriminatory reason was insubordination through failure to provide notice, but sufficient notice was provided and the request for leave was a key component of the termination decision); *Jordan v. Marsh USA, Inc.,* No. 18-C-4327, 2019 WL 5682834, at *7 (N.D. Ill. Nov. 1, 2019) ("[A]n employer is not entitled to summary judgment where it based its motivation for terminating an employee, 'or at least a key component of it,' on a mistaken belief that the employee was ineligible for the FMLA's protections."). Accordingly, the honest belief doctrine does not require summary judgment in BNSF's favor.

Because genuine disputes of material fact remain, the motions for summary judgment as to Mr. Livesay's retaliation claim are denied.

*C. Damages*

Finally, as previously stated, BNSF seeks summary judgment as to Mr. Livesay's requested relief—specifically, front pay, certain aspects of his back pay claim, liquidated damages, and reinstatement. The court separately considers each request for relief.

1. Front Pay

BNSF first contends that Mr. Livesay's failure to mitigate his damages by seeking comparable employment precludes front pay. In the Tenth Circuit, "the employer has the burden of showing that the [plaintiff employee] did not exercise reasonable diligence in mitigating damages caused by the employer's illegal action." *EEOC v. Sandia Corp.*, 639 F.2d 600, 627 (10th Cir. 1980). To satisfy its burden, the employer "must establish (1) that the damage suffered by plaintiff could have been avoided, i.e., that there were suitable positions available which plaintiff could have discovered and for which he was qualified; *and* (2) that plaintiff failed to use reasonable care and diligence in seeking such a position." *Sandia Corp.*, 639 F.2d at 627 (emphasis added). BNSF offers no evidence that there were suitable positions available which Mr. Livesay could have discovered and for which he was qualified.

Citing caselaw from other Circuits, BNSF argues that it is relieved of its burden to demonstrate the availability of other positions because Mr. Livesay made no effort to secure comparable employment. [Doc. 66, p. 21; Doc. 78, pp. 10-11]. However, BNSF directs the court to no Tenth Circuit case law adopting the exception or, at minimum, suggesting a willingness to do so. *See Carrasco v. Centura Health Corp.*, No. 19-CV-00347-LTB-KMT, 2021 WL 4913983, at *3 (D. Colo. June 18, 2021) ("I see no indication from the Tenth Circuit that it is inclined to adopt this 'emerging' trend and depart from its clear holding . . . that a defendant must establish **both** prongs of the two-part test."); *Brooks v. Via Christi Reg'l Med. Ctr., Inc.*, No. 08-1376-JTM, 2010 WL 446523, at **13-14 (D. Kan. Feb. 4, 2010); *Thomsen v. City of Anadarko*, No. 05-1196-F, 2006 WL 2773230, at **1-2 (W.D. Okla. Sept. 25, 2006). Further, Mr. Livesay submits evidence that he knew from word of mouth and his familiarity with the rural area where he lives that there were no other positions available with comparable salary. [Doc. 71-2, pp. 37-38]. Under

the circumstances and at this point in the litigation, the court declines to depart from binding Tenth Circuit case law. *See also Jurczyk*, 191 F. Supp. 3d at 1270-71 (summary judgment on front pay issue premature); *Smith v. Millennium Rail, Inc.*, 241 F. Supp. 3d 1183, 1207 (D. Kan. 2017) (declining summary judgment based inconclusive evidence). Because BNSF has not met its burden to demonstrate the availability of other suitable positions, and given the inconclusiveness of the evidence submitted, Mr. Livesay's alleged failure to seek comparable employment does not preclude an award of front pay.

BNSF next contends that Mr. Livesay's planned retirement and election of railroad retirement annuity preclude front pay. [Doc. 66, p. 21]. However, viewing the evidence in the light most favorable to Mr. Livesay, a genuine dispute of material fact exists as to Mr. Livesay's intentions with respect to retirement prior to his termination. Nor does Mr. Livesay's election of the railroad retirement annuity require judgment in BNSF's favor at this stage of the proceedings.

BNSF first cites 45 U.S.C. § 231a(e), which is part of the Railroad Retirement Act of 1974 (RRA) and states "[n]o individual shall be entitled to an annuity . . . until he shall have ceased to render compensated service to an employer . . ." and "[a]n annuity under subsection (a)(1) shall be paid only if the applicant shall have relinquished such rights as he may have to return to the service of an employer." 45 U.S.C. §§ 231a(e)(1), (2). However, BNSF cites no caselaw applying the RRA to preclude FMLA damages. Further, in the context of other statutory tort claims, courts have held "[t]he RRA 'is substantially a Social Security Act for employees of common carriers.' It establishes conditions for retirement and disability. It does not deal with employer tort liability." *Broadus v. CSX Transp., Inc.,* No. 08-1201, 2009 WL 1970745, at *3 (E.D. La. July 8, 2009) (internal citation omitted) (quoting *Eichel v. N.Y. Central R.R. Co.*, 375 U.S. 253, 254 (1963)).

Under the circumstances, the court declines to apply the Railroad Retirement Act to preclude an award of damages in this matter at this stage.

BNSF next cites two published Tenth Circuit decisions—*Davoll v. Webb,* 194 F.3d 1116, 1143-44 (10th Cir. 1999) and *Whittington v. Nordam Grp. Inc*., 429 F.3d 986, 1001 (10th Cir. 2005). However, neither *Davoll* nor *Whittington* were decided on summary judgment. Further, both cases recognize that "[n]umerous factors are relevant in assessing front pay," and "[t]he district court may consider all evidence presented at trial in formulating the proper award." *Davoll,* 194 F.3d at 1143-44 and *Whittington*, 429 F.3d at 1001. Given that disputes of material fact exist as to how long Mr. Livesay intended to continue work, the court concludes that judgment as a matter of law on this basis is premature and will consider the evidence presented at trial.

Finally, BNSF argues that Mr. Livesay's claimed physical limitations and expired engineer certification preclude front pay. However, viewing the evidence in the light most favorable to Mr. Livesay, genuine disputes of material fact exist as to whether Mr. Livesay's physical limitations rendered him unable to work. Nor does the expired engineer certification warrant judgment as a matter of law, as it is the responsibility of the railroad, not the employee, to certify engineers. *See* 49 C.F.R. §§ 240.203(a), 240.217. Further, Mr. Livesay submits evidence that it was his understanding that he could not renew his certification unless employed by a railroad. *See* [Doc. 66-29, p. 8]. Viewing this evidence in the light most favorable to Mr. Livesay, summary judgment is inappropriate.

For all of these reasons, BNSF is not entitled to summary judgment as to Mr. Livesay's request for front pay, and defendant's motion in this regard is denied.

2. Back Pay

BNSF next asserts that Mr. Livesay is not entitled to back pay. Like front pay, an award of back pay is an "equitable decision[] ultimately committed to discretion of the Court." *Jurczyk,* 191 F. Supp. 3d at 1270-71.

BNSF first argues that Mr. Livesay's alleged failure to mitigate damages precludes back pay. However, as set forth above, BNSF has not satisfied its burden to show failure to mitigate and, further, a genuine dispute of material fact exists. For these reasons, back pay is not barred based on failure to mitigate damages.

BNSF next points to Mr. Livesay's railroad retirement and argues, "[a]t a minimum, any back-pay award must be limited to account for the annuity benefits Plaintiff has received since March 1, 2024." [Doc. 66, p. 23]. As previously stated, a genuine dispute of material fact exists as to Mr. Livesay's intentions with respect to retirement prior to his termination. Thus, back pay damages are not wholly precluded.

To the extent that BNSF seeks to *limit* any award of back pay to Mr. Livesay, rather than wholly preclude same, the issue is premature and not capable of resolution based on the summary judgment record. The parties may address the issue in trial briefs.

3. Liquidated Damages

Pursuant to the FMLA, an employer who violates the Act shall be liable to the employee for "an additional amount as liquidated damages," 29 U.S.C. 2617(a)(1)(A)(iii), "unless it 'proves to the satisfaction of the court that the act or omission . . . was in good faith and that the employer had reasonable grounds for believing that the act or omission was not a violation.'" *Bowles-Snailer v. Texoma Labs, Inc.*, No. CIV-22-139-RAW-GLJ, 2023 WL 5155020, at *3 (E.D. Okla. June 9, 2023). Viewing the summary judgment evidence in the light most favorable to Mr. Livesay and

drawing all reasonable inferences in his favor, a genuine issue of fact exists as to whether BNSF acted in good faith and had reasonable grounds for believing that its conduct was not in violation of the FMLA. Specifically, Mr. Livesay has submitted evidence from which a reasonable juror could infer that BNSF did not request recertification prior to his termination as set forth in the applicable regulations, provide Mr. Livesay an opportunity to respond, or consider information submitted by Mr. Livesay. For all of this reason, judgment as a matter of law is inappropriate.[5]

4. Reinstatement

Finally, BNSF asserts that reinstatement is "neither feasible nor appropriate" because Mr. Livesay "voluntarily relinquished his right to return to railroad service . . ., never sought comparable employment following his termination, and allowed the locomotive engineer certification required for his position to expire." [Doc. 66, p. 24]. However, as set forth above, genuine disputes of material fact exist as to these issues. Thus, judgment as a matter of law is not warranted at this time.

## V. Conclusion

WHEREFORE, the Motion for Summary Judgment [Doc. 66] of defendant BNSF Railway Company is denied.

IT IS FURTHER ORDERED that the Motion for Partial Summary Judgment [Doc. 64] of plaintiff Wayne Livesay is granted in part and denied in part. The motion is granted as to liability only with respect to the FMLA interference claim. The motion is otherwise denied.

---

[5] BNSF also argues that, "[b]ecause Plaintiff cannot establish entitlement to backpay or front pay, there is no basis for an award of liquidated damages." [Doc. 66, p. 24]. The court having denied BNSF's motion for summary judgment as to back pay and front pay, defendant's argument is moot or, in the alternative, denied.

IT IS FURTHER ORDERED that, the court having resolved all dispositive motions, the dispositive motion hearing set for Thursday, September 3, 2026 at 1:30 p.m. is stricken.

IT IS FURTHER ORDERED that this matter is set for Scheduling Conference on September 15, 2026 at 2:00 p.m.

IT IS SO ORDERED this 1st day of September, 2026.

GREGORY K. FRIZZELL
UNITED STATES DISTRICT JUDGE